**[NOT FOR PUBLICATION]**

**[27, 28, 29, 30, 31, 32]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ : | | |
| JAMAR M. ARCHER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-cv-2306 (FLW) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID MELCHIONDA, et al., | : | |
| | : | **OPINION** |
| Defendants. | : | |
| | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ : | | |

**WOLFSON, United States District Judge**

Presently before the Court are two unopposed[1] Motions for Summary Judgment to

Dismiss the Complaint of Plaintiff, Jamar M. Archer, ("Archer"), with respect to his 42 U.S.C. §

1983 claims against Defendants, David Melchionda ("Melchionda"), a Watchung Police Officer,

---

[1] The Court sent a letter to Plaintiff indicating that two motions for summary judgment were pending and that no opposition papers were received. Plaintiff never responded to the letter, nor did he submit any opposition to the motions. See infra p. 6.

and against Sean Parello ("Parello") and Yves Martin ("Martin"), Target department store security specialists.  This action arises out the events that occurred on April 2, 2006, while Archer was arrested for shoplifting at a Target department store in Watchung, NJ.  Plaintiff's section 1983 claims are based on allegations of excessive force against Melchionda, Parello, and Martin.[2]  The first motion is brought by Defendant, Melchionda and seeks to dismiss Plaintiff's Complaint based on:  (1) the defense of qualified immunity, and (2) Plaintiff's failure to prosecute; the second motion is brought by Defendants, Parello and Martin, and seeks to dismiss Plaintiff's Complaint based on the argument that they were not acting under color of state law for purposes of section 1983.  The Court finds that for the following reasons, all Defendants are entitled to summary judgment on all of Plaintiff's claims.

I.      FACTUAL BACKGROUND

        On April 2, 2006, Archer shoplifted two DVDs from the Target store located in Watchung, New Jersey.  (See Compl. p. 7).  Target Asset Protection Specialist Parello was conducting closed circuit television surveillance of the sales floor when he observed Plaintiff unwrap and conceal two DVDs.  (See Marc D. Haefner, Esq. Cert. ¶ 4, Ex. B, Target Incident Report).  Parello immediately contacted the Watchung Police Department and reported the situation.  (See Haefner Cert., Ex. B, Target Incident Report).  Parello also notified Target Asset Protection Specialist Martin, who was positioned by the exit doors of the store, and instructed

_____

[2]In his Complaint, Archer alleges that Parello and Martin attacked, wrestled and held him down while Melchionda "assaulted [him] with a black jack or baton [multiple] times."  (Compl. p. 4, 9, 10).  However, Archer fails to assert a cause of action for excessive force against the Defendants.  Nonetheless, the Court will liberally construe Archer's Complaint because he has filed this action pro se.  For the purposes of its analysis the Court will assume that a cause of action for excessive force was properly pled by the Plaintiff.

him to apprehend Plaintiff for suspected shoplifting if Plaintiff attempted to exit the store without

paying for the DVDs he had hidden on his person.  (See Haefner Cert. ¶ 6, Ex. C, Parello's Ans.

to Interrogs. at No. 2).  Once Plaintiff passed all points of sale, Martin confronted him, but

Plaintiff began to run.  (See Haefner Cert. ¶ 6, Ex. C, Parello's Ans. to Interrogs. at No. 2; Ex. D,

Martin's Ans. to Interrogs. at No. 2).  While still in the vestibule, Martin grabbed the back of

Plaintiff's sweater in an attempt to stop him from exiting the building.  (See Haefner Cert., Ex.

D, Martin's Ans. to Interrogs. at No. 2).  Parello assisted Martin in trying to restrain Plaintiff by

grabbing him around the waist.  (See Haefner Cert., Ex. B, Target Incident Report).  Nonetheless,

Plaintiff continued to run, and made it outside of the building, across the sidewalk and into the

parking lot with Martin still holding onto his sweater.  (See Haefner Cert., Ex. C, Parello's Ans.

to Interrogs. at No. 2; Ex. D, Martin's Ans. to Interrogs. at No. 2).

        At about 6:12 p.m., Officer David Melchionda was dispatched in response to Parello's

report that a shoplifting was taking place at the Target store.  Officer Melchionda was in a

marked patrol car in the vicinity and arrived on the scene within minutes.  The dispatcher

provided details as to the suspect involved. (Def., Melchionda's Fact St. ¶ 1; see Ex. A,

Melchionda Certification, ¶ 6).

        When Officer Melchionda arrived at the Target store parking lot, he observed an

African-American male bursting through the front doors of the Target store with two Target

security employees trying to detain him.  The situation fit the description of the incident

described to Officer Melchionda by the dispatcher. (Def., Melchionda's Fact St. ¶ 2; see Ex. A,

Melchionda Certification, ¶ 7).  The African-American male (who was later identified as Jamar

M. Archer) ran past Officer Melchionda's patrol car with the Target security guards, Parello and

Martin, still actively trying to detain him.  Officer Melchionda chased Archer with his patrol car in order to catch up with him.  Even with the two security guards on his back, Archer did not slow down.  (Def., Melchionda's Fact St. ¶ 3; see Ex. A, Melchionda Cert., ¶ 8).

After closing the distance between Archer and himself, Officer Melchionda exited his patrol car and pursued Archer on foot.  At that point, Archer had one security guard on his back while the other security guard, who was holding Archer's shirt, was being dragged on the pavement. (Def., Melchionda's Fact St. ¶ 4; see Ex. A, Melchionda Cert., ¶ 9).  Defendants Parello and Martin contend that when Officer Melchionda arrived on the scene they released Plaintiff.  (Defs.' Parello & Martin Fact St. ¶ 4).  They also contend that at no time did Officer Melchionda give instructions or directions to Parello or Martin.  (See Haefner Cert. ¶ 7, Ex. E, Parello & Martin's Requests to Admit).  As Officer Melchionda approached Archer, Melchionda avers that Archer threw the security guard off his back and into him.  Officer Melchionda then verbally ordered Archer to stop resisting and "go to the ground," where he would not be able to continue fighting against the security guards.  (Def., Melchionda's Fact St. ¶ 5; see Ex. A, Melchionda Certification, ¶ 10).

Archer did not go to the ground, but rather began swinging his arms at Officer Melchionda and pushed him against a car in an attempt to clear a path to get away.  (Def., Melchionda's Fact St. ¶ 6; see Ex. A, Melchionda Certification, ¶ 11).  Officer Melchionda contends that Archer was extremely strong and continued to act violently as he struggled with him.  Officer Melchionda's attempts to grasp and control Archer slowed Archer down and eventually they found themselves face to face in a confined space, with Archer continuing to be violent and refusing to cease resistance. Id.  At that point, Officer Melchionda concluded that he

was in jeopardy of being injured or incapacitated and realized that the events were occurring in a public place where bystanders could get harmed or involved (this event took place in the parking lot of the Target store at the Watchung Square Mall during hours when all stores were open for business).  (Def., Melchionda's Fact St. ¶ 7; see Ex. A, Melchionda Certification, ¶ 12).  These reasons prompted Officer Melchionda to then use his department-issued baton to strike Archer on the left forearm.  When Archer dropped his arms and slowed his movements, Officer Melchionda was able to wrap his arms around Archer and bring him to the pavement.  According to Officer Melchionda, Archer continued to struggle and tried to overpower him to get away, but Officer Melchionda was ultimately able to apply handcuffs to Archer's wrists, and thus, secure Archer. (Def., Melchionda's Fact St. ¶ 8; see Ex. A, Melchionda Certification, ¶ 13).

Officer Melchionda states that in his training as a Watchung Police Officer and a graduate of the Somerset County Police Academy, the tactics and amount of force he utilized in order to subdue Archer were objectively reasonable and necessary in order to effect Mr. Archer's arrest and to prevent Archer from injuring him or gaining access to any of the equipment which Officer Melchionda carries as a police officer. (Def., Melchionda's Fact St. ¶ 9; see Ex. A, Melchionda Certification, ¶ 14).

## II.   PROCEDURAL HISTORY

Archer filed a Complaint in the United States District Court for the District of New Jersey on May 22, 2006.  A Summons was issued on July 7, 2006, but was not served until September 19, 2006.  On June 19, 2006, Archer moved to proceed in forma pauperis. This application was granted on July 5, 2006.  On or about September 26, 2006, Defendant Melchionda filed his Answer.  Defendants Parello and Martin filed Answers on or about the same date.  On October 6,

2006, the Honorable John J. Hughes, U.S.M.J. entered an order requiring that the parties file

Pre-Trial Memoranda by April 10, 2007.  On April 10, 2007, the deadline for the filing of the

Pre-Trial Memoranda was extended through June 11, 2007.  Defendants Parello and Martin filed

their Pre-Trial Memorandum on June 8, 2007.  Defendant Melchionda filed his Pre-Trial

Memorandum on June 11, 2007.  Plaintiff Archer filed no Pre-Trial Memorandum and has not

filed one as of the time of the filing of this Opinion.  Defendant Melchionda's motion for

summary judgment was filed June 22, 2007 and Defendants Parello and Martin's motion for

summary judgment was filed on October 11, 2007.  Finally, on November 7, 2007, having

received no opposition from Plaintiff, this Court sent a letter to all parties stating that it would

consider Defendants' motions for summary judgment unopposed.

## III.    STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co.,

223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the

Court considers "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits,"  Fed. R. Civ. P. 56(c), and construes all facts and inferences in the

light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.

2002).  The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend against a

motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of

the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Id. at 252.

If the non-movant fails to oppose the motion for summary judgment, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); see also Damino v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175. When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. I.R.S., 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assocs., 922 F.2d at 175).  Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. Cty of Phila., 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000).

IV.   **DISCUSSION**

There are two pending motions before this Court.  The Court will address each motion separately.

A.      **MELCHIONDA'S MOTION FOR SUMMARY JUDGMENT TO DISMISS ARCHER'S COMPLAINT**

Melchionda seeks Summary Judgment to Dismiss Archer's Complaint based upon: (1) the defense of qualified immunity; and (2) a failure to prosecute predicated on Archer's failure to comply with a court order to submit his Pre-Trial Memorandum.  The Court finds that Archer's section 1983 claim against Melchionda, alleging excessive force, is meritless and that Officer Melchionda is shielded from suit by the defense of qualified immunity.  The Court will not address Melchionda's arguments regarding Plaintiff's failure to prosecute because the Court has elected to decide this case on the merits.

1.      **Qualified Immunity Defense to Excessive Force Claim**

i.      **Qualified Immunity Standard**

Melchionda asserts that he is entitled to qualified immunity on Plaintiff's section 1983 claim of excessive force.  The Third Circuit has recently explained the legal framework for evaluating claims of qualified immunity:

> When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. (citation omitted). The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them 'from undue inference with their duties and from potentially disabling threats of liability.' The privilege of qualified immunity, however, can be overcome when state officials violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"

Wright v. Cty of Phila., 409 F.3d 595, 599-600 (3d Cir. 2005).

The Supreme Court has set forth the analytical framework for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry . . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

Saucier v. Katz, 533 U.S. 194, 201 (2001).

The second step requires further elaboration.  "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right.  Karnes v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995)." Hughes v. Shestakov, No. 00-6054, 2002 WL 1742666, *4. (E.D. Pa. Jul. 22, 2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. The analysis of whether a right was "clearly established" "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Thus, qualified immunity gives a police officer room to make a reasonable mistake about the legality of his or her actions:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205. In other words, "qualified immunity protects all but the plainly

incompetent or those who knowingly violate the law." Id. at 202.

Finally, because Melchionda moves for summary judgment and I am "reviewing a claim

of qualified immunity, [I] view the factual allegations in the light most favorable to [Archer,] the

party claiming injury." Wright, 409 F.3d at 597, n.1.  However, since Archer, "the non-moving

party, fail[ed] to oppose [Melchionda's] motion for summary judgment by written objection,

memorandum, affidavits [or] other evidence, the Court will accept as true all material facts set

forth by [Melchionda,] the moving party, with appropriate record support."  Carp, 2002 WL

373448, at *2 (quoting Anchorage Assocs., 922 F.2d at 175).

### ii.      Qualified Immunity Defense: Step One

When considering an officer's defense of qualified immunity, the Court must examine, as

a threshold matter, whether the facts alleged, taken in the light most favorable to the plaintiff,

violated a constitutional right. Saucier, 533 U.S. at 201.  "If no constitutional right would have

been violated were the allegations established, there is no necessity for further inquiries

concerning qualified immunity."  Id.  Thus, the Court must begin its inquiry with a survey of case

law delineating the factors for determining whether an excessive force violation has been

committed.

An excessive force claim must be evaluated under the Fourth Amendment standard of

objective reasonableness, without regard to underlying motivation.  See Graham v. Connor, 490

U.S. 386, 395-97 (1989).  This requires "careful attention to the facts and circumstances of each

particular case, including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." Id. at 396 (citation omitted). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Importantly, the Third Circuit rejects the proposition that "the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." Id. (citation omitted).

In evaluating excessive force claims, courts must adopt an officer's "on the scene" perspective:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving - about the force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citation omitted).  Finally, "[t]he reasonableness of the use of force is normally an issue for the jury." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004). "[A] police officer who is accused of having used excessive force is not 'precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff,' but that 'contention . . . must be considered at trial.'" Id. at 199 (emphasis in original).  Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all

factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (citations omitted).

After a careful review of the established record of this case, the Court finds that Officer Melchionda's actions were objectively reasonable.  Archer admits that he shoplifted and was therefore legally subject to arrest.  Archer does not dispute that Officer Melchionda was told that Archer had committed an offense, and that he observed Archer fighting off two Target security guards who were attempting to detain him.  Archer exhibited physical violence throughout the course of the arrest and even threw one of the Target security specialists into Officer Melchionda when he arrived on the scene.  (Def., Melchionda's Fact St. ¶ 5; see Ex. A, Melchionda Certification, ¶ 10).  In addition, the events took place in the parking lot of a mall during regular operating hours.  This gave Officer Melchionda a sense of urgency as it was more likely that a bystander could be involved or injured during the course of Archer's arrest.  Officer Melchionda was authorized under the law to arrest Archer, and was warranted in using reasonable force to apprehend a fleeing criminal, who was resisting arrest, and posed a potential danger to the Officer, Target employees, and patrons of the mall where the events took place.

Archer has not presented the slightest modicum of competent evidence to suggest that Melchionda breached any accepted police practice or protocol or that he acted unlawfully.  This is more readily apparent after considering the circumstances surrounding the arrest, which include Archer's:  (1) flight from the officer; (2) disobedience of the officer's commands; and (3) engagement in a physical alteration with the officer, who was the only officer on the scene at the time.  Archer simply alleges that Officer Melchionda assaulted him with his baton.  However in the context of the surrounding circumstances set forth in the record, Officer Melchionda was

-12-

fully justified in taking Archer into custody and striking him in the forearm with his baton to subdue him.  Hence, the Court finds that after resolving all factual disputes in favor of the Plaintiff, that Officer Melchionda's use of force was objectively reasonable under the circumstances and that no reasonable juror could find otherwise.

### iii.    Qualified Immunity Defense: Step Two

Even if the Court were to find that a constitutional violation occurred based upon the facts alleged by Plaintiff in his Complaint, his section 1983 claim still fails when analyzed under the second step of the qualified immunity inquiry.  The second step in the qualified immunity analysis "permits officers to make reasonable mistakes about what is lawful." Jones, 45 Fed. Appx. at 197. (citation omitted).  It is important to note that "even where reasonableness is a part of the inquiry for both the constitutional question and for qualified immunity, as it is in an excessive force case, the inquiries remain distinct." Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007). The Third Circuit has recently outlined the second step of the qualified immunity inquiry in the context of an excessive force claim:

> Having determined that a reasonable jury could find a constitutional violation based on the alleged facts, we next consider whether [plaintiff's] rights in this specific context were "clearly established."  To conclude that a right is "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Thus, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Officers who make reasonable mistakes as to what the law requires are entitled to qualified immunity, which "operates . . .to protect officers from the sometimes hazy border between excessive force and acceptable force."  In the context of excessive force claims, we have relied on the factors set forth in the Graham and Sharrar in evaluating

-13-

> whether an officer made a reasonable mistake. We have stated that
> the factors 'are well-recognized,' and that when an officer applies
> them in an unreasonable manner, he is not entitled to qualified
> immunity."

Green v. N.J. State Police, Docket No. 06-4111, 2007 WL 2453580, *3-4 (3d Cir. Aug 29, 2007)

(citation omitted).

It follows that when the Graham and Sharrar factors are applied in a reasonable manner,

an officer is entitled to qualified immunity.  Thus, at this point in the qualified immunity

analysis, the issue is no longer whether a reasonable jury could find, given Plaintiff's version of

the events, that Melchionda's actions were objectively unreasonable.  The point of the second

step in the qualified immunity analysis is that room for reasonable disagreement about the

application of the law is not enough.  Plaintiff's claim can only survive the second step of the

qualified immunity analysis if, given his version of events, there is *no* room for reasonable

disagreement among reasonable police officers as to the lawfulness of Melchionda's actions:

"Officers who make reasonable mistakes as to what the law requires are entitled to qualified

immunity." Green, 2007 WL 2453580 at *3.  Thus, the right at issue is only "clearly established"

if "it would be unreasonable for officers to believe that [Melchionda's actions] would not

constitute excessive force." Id. at *4. See also Tofano v. Reidel, 61 F. Supp. 2d 289, 304

(D.N.J.1999) (stating that "if reasonable officers could believe that a certain course of conduct is

unlawful but other reasonable officers could believe that the conduct was lawful, qualified

immunity attaches.").

In this case, Officer Melchionda confronted Archer for shoplifting based on reliable

information, saw Archer physically fighting with security guards, and was personally assaulted

-14-

by Archer. Thus, there was no doubt that Archer was capable of violence; Officer Melchionda

witnessed Archer's violent resistance to apprehension even before the Officer himself became

involved in the attempt to subdue Archer.  Officer Melchionda was faced with resistence from

Archer in an environment (a shopping center parking lot) where the public could get involved or

get injured.  Despite that, Officer Melchionda never pulled his firearm.  He never used mace or

any other substance to subdue Archer.  He utilized a police baton to strike Archer in an area of

his body not designed to produce serious injury.  Simply put, Officer Melchionda repeatedly tried

to get Mr. Archer to submit to arrest, but Archer would not do so.  There is nothing to support an

allegation that Officer Melchionda was under some duty to give up his efforts to arrest Mr.

Archer.  To the contrary, it was the officer's duty to make that arrest, and it was Mr. Archer's duty

to refrain from resisting the arrest.  Plaintiff offers no testimony from any law enforcement expert

to establish that Officer Melchionda should have abandoned all efforts to arrest Mr. Archer.

Plaintiff offers no testimony that Officer Melchionda's use of a physical grasp and a blow from a

police baton (law enforcement issued equipment) was an objectively unacceptable method of

securing an individual who was physically resisting apprehension and arrest.  Even if the Court

accepts that Archer sustained a bruise or some other minor injury when Officer Melchionda

utilized the ASP baton to try to control Archer, there is nothing to establish that Officer

Melchionda's efforts were unreasonable under these specific facts, nor that other police officers

would view them as constituting excessive force. Plaintiff offers nothing to suggest that proper

procedure was not followed in this case.

      Rather, Archer simply seems to suggest in his Complaint that the very use of a baton

alone (or, perhaps, that the very effort by Target security and this police officer to prevent

-15-

Plaintiff from getting away with stolen merchandise) establishes a cause of action. <u>Graham</u>,

<u>supra.</u>, clearly dictates otherwise.  In the absence of any testimony from any witness or expert to

suggest that Officer Melchionda's efforts to secure Mr. Archer were objectively unreasonable, no

cause of action lies against Officer Melchionda.  An officer's use of reasonable force to effect an

arrest is legal, and does not constitute a constitutional violation or an assault and battery.

Furthermore, Officer Melchionda avers in his certification, and it is uncontested by Plaintiff, that

the tactics and amount of force he utilized in order to subdue Archer were objectively reasonable.

(Def., Melchionda's Fact St. ¶ 9; <u>see</u> Ex. A, Melchionda Certification, ¶ 14).  For these reasons,

the Court finds that a reasonable police officer would believe that Officer Melchionda's course of

conduct was lawful; hence qualified immunity attaches.  Accordingly, Plaintiff's Complaint

against Melchionda must be dismissed with prejudice.

### 2.      Failure to Prosecute:  Plaintiff's Failure to File a Pre-trial Memorandum

As an alternative ground for dismissal, Defendant Melchionda argues that Archer's

Complaint should be dismissed for failure to prosecute under <u>Fed. R. Civ. P.</u> 41(b).  However,

this ground is moot because as set forth <u>supra</u>, the Court has elected to decide this case on the

merits.[3]

_____

[3]Defendant Melchionda asks the Court to award costs, pursuant to <u>Fed. R. Civ. P.</u> 41(b). The Court notes that <u>Fed. R. Civ. P.</u> 41(b) does not specifically provide for the awarding of costs as a sanction, however it is well established that "a district court may impose attorney's fees as a sanction under its inherent power [when there is] some factual predicate which would indicate that the plaintiff was less than diligent in either prosecuting its case or complying with a court order." Com. v. Flaherty, 40 F.3d 57, 62 (3d. Cir. 1994) (citations omitted).  Indeed, Plaintiff has neglected to put forth a case by failing to comply with Judge Hughes' order to submit a pre-trial memorandum and failing to submit opposition papers in response to Defendants' motions for summary judgment.  Nonetheless, Plaintiff is proceeding <u>pro se</u> and <u>in forma</u> <u>pauperis</u>.  He also did not totally ignore the case since he did answer Defendants' interrogatories.  Under such

**B.     PARELLO AND MARTIN'S MOTION FOR SUMMARY
JUDGMENT TO DISMISS ARCHER'S COMPLAINT**

Parello and Martin contend that Archer's Complaint against them must be dismissed

because they are not considered state actors for purposes of a section 1983 action.  This Court

agrees.  To make a prima facie case under 42 U.S.C. § 1983, a plaintiff must demonstrate:  (1)

that a person deprived him of a federal right; and (2) that such a person acted under color of state

law.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Gomez v. Toledo,

446 U.S. 635, 640 (1980)).  Specifically, 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.

The color of state law requirement is a threshold issue.  Groman, 47 F.3d at 638.

Therefore, persons not acting under color of state law are not liable under section 1983.  Id.

(citing Versarge v. Twp. of Clinton, 984 F.2d 1359, 1363 (3d Cir. 1993)).  Here, Parello and

Martin were not acting under color of state law.  Indeed, Plaintiff makes no such allegation in his

Complaint and no such argument in his answers to interrogatories.  Accordingly, no claim exists

under section 1983 and Plaintiff's Complaint should be dismissed by the Court on this ground

alone.[4]  See Caldwell v. CVS Corp., 443 F. Supp. 2d 654, 657 (D.N.J. 2006) (finding that a pro

---

circumstances, this Court is reluctant to award costs and declines to exercise its discretion to do
so in this case.

   [4]The Court notes that "[p]ro se submissions, 'however inartfully pleaded,' must be held to
'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for

se plaintiff failed to state a claim under section 1983 because he made no argument that

defendant CVS was acting under color of state law when a CVS manager improperly accused

him of shoplifting).

However, even if the Court were to interpret Plaintiff's Complaint liberally and read in

such an allegation, the Court finds that Parello and Martin were not acting under color of state

law.  To determine whether the action of a private individual is converted into one under color of

state law, a plaintiff must show that the conduct allegedly causing the deprivation of a federal

right is fairly attributable to the State. Groman, 47 F.3d at 637 (citing Jackson v. Metropolitan

Edison Co., 419 U.S. 345, 351 (1974)); see also Luger v. Edmondson Oil Co., Inc., 457 U.S. 922,

937 (1982). In the context of commercial establishments, the Third Circuit has held that the

conduct of a store and its employees cannot properly be attributed to the State unless "(1) the

police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest

anyone identified as a shoplifter by the store without independently evaluating the presence of

probable cause." Cruz v. Donnelly, 727 F.2d 79, 81 (3d Cir. 1984).

In Cruz, a store manager accused plaintiff of shoplifting, and purposely commanded

responding police to strip search plaintiff. Id. at 79.  Plaintiff subsequently filed a civil rights

action under section 1983 alleging that he was detained and searched without probable cause as a

result of racial discrimination.  Id.  The court found that nothing in plaintiff's complaint or

supporting affidavits suggested the existence of a pre-arranged plan by which the police

---

failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief.' " Then v. I.N.S., 58 F. Supp. 2d 422, 429
(D.N.J. 1999) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

substituted the judgment of private parties for their own official authority.  Id. at 80.

Accordingly, the absence of such allegations or facts precluded private liability under section

1983.  Id. at 82.

Similarly, in the present case, the record is devoid of evidence that suggests the existence

of a pre-arranged plan between the police and Target employees Parello and Martin.  In fact,

Defendants contend that at no time in connection with the circumstances surrounding the April 2,

2006 arrest of Plaintiff were instructions or directions exchanged between Officer Melchionda

and Parello or Martin.  (See Haefner Cert. ¶ 7, Ex. E, Parello & Martin's Requests to Admit, Nos.

1-2).  Even if Melchionda gave instructions to Parello and Martin during the course of the arrest,

as Archer alleges in his Complaint, there is nothing that indicates it was part of a pre-arranged

plan,[5] or that under that plan, the police would arrest anyone identified by Target as a shoplifter

without an independent determination of probable cause.  Here, Officer Melchionda made an

independent determination that probable cause existed to arrest Plaintiff.  (See Haefner Cert. ¶ 7,

Ex. E, Parello & Martin's Requests to Admit, No. 3).  Thus, Parello and Martin cannot be held

liable under section 1983.

Furthermore, as employees of Target, Parello and Martin were authorized to detain

Archer for suspected shoplifting in accordance with New Jersey's Shoplifting Act, N.J.S.A.

2C:20-11.[6]  Courts have found that store employees acting pursuant to this and similar statutes

---

[5]Archer states in his Complaint that Officer Melchionda assaulted him with his baton while saying to Parello and Martin, "hold him good so he can get strikes on his body."  (Compl. p. 10).

[6]N.J.S.A.  2C:20-11(e) provides that: "[a] law enforcement officer, or a special officer, or a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover the merchandise by taking the person into

are not acting under color of state law. Gipson v. Supermarkets General Corp., 564 F. Supp. 50, 55 (D.N.J. 1983) (holding that "a merchant and his agent and employees are not acting under color of state law when a customer is detained as provided by N.J.S.A. 2C:20-11."); see also Wallace v. Federated Dep't Stores, Inc., No. 05-4204, 2006 WL 1620176 at *3 (E.D. Pa. June 07, 2006) (concluding that "detention pursuant to the Pennsylvania Retail Theft Act is not considered either to be state action itself or to indicate a pre-arranged plan as required under Cruz"), aff'd in part, vacated in part, 214 Fed. Appx. 142 (3d Cir. 2007); Lewis v. J.C. Penney Co., Inc., 948 F. Supp. 367, 373 (D. Del. 1996).  Accordingly, Plaintiff cannot prevail on his claim for relief pursuant to section 1983, and therefore, summary judgment is granted in favor of Parello and Martin, and Plaintiff's Complaint is dismissed with prejudice on all counts.

## V.      CONCLUSION

For the abovementioned reasons, summary judgment is granted on both motions in favor of all Defendants to dismiss Plaintiff's Complaint and all counts contained therein, in its entirety.

Dated: January 22nd, 2008

s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

---

custody, may, for the purpose of attempting to effect recovery thereof, take the person into custody and detain him in a reasonable manner for not more than a reasonable time, and the taking into custody by a law enforcement officer or a special officer or merchant shall not render such person criminally or civilly liable in any manner or to an extent whatsoever."

-20-